UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re
**JOHN THOMAS RUSSO,**
    Debtor

Chapter 7
Case No. 03-10554-JNF

**JENNIE RUSSO,**
    Plaintiff,
v.
**JOHN THOMAS RUSSO,**
    Defendant

Adv. P. No. 07-1194

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are: (1) the "Defendant's Renewed Motion to Dismiss Plaintiff's Complaint to Determine Non-Dischargeability of Debtor's Indebtedness to Plaintiff" (the "Motion to Dismiss") and (2) the "Plaintiff's Renewed Opposition to Defendant/Debtor's Renewed Motion to Dismiss *and* Plaintiff's Motion for Summary Judgment or in the Alternative Judgment on the Pleadings" (the "Opposition"). Through his Motion to Dismiss, the Chapter 7 debtor, John Thomas Russo (the "Debtor"), seeks dismissal of the Amended Complaint filed against him by his aunt, Jennie Russo (the "Plaintiff"), who alleges that he borrowed $82,000 from her over a seventeen year period under false pretenses, used the borrowed funds for gambling activities instead of for legitimate business purposes as represented to her, and intentionally omitted the debt owed to her from his original bankruptcy schedules. The Court heard the Motion to Dismiss and the Opposition on September 14, 2007. The parties have each filed memoranda of law.

1

The relevant facts necessary to decide the two matters before the Court are undisputed. A factual dispute between the parties does exist with respect to whether the Debtor failed to notify the Plaintiff of his bankruptcy petition filed in 2003. As discussed below, however, this discrete dispute does not preclude the Court from ruling on the Motion to Dismiss. Based upon the undisputed facts, the Court now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a voluntary petition under Chapter 7 on January 22, 2003. He filed Schedules A through J on the petition date, as well as a "Declaration Concerning Debtor's Schedules" in which he declared under penalty of perjury that his Schedules were "true and correct to the best of my knowledge, information and belief." The Debtor's schedules reflect that a majority of his obligations were for trade and tax debt incurred in connection with a business known as JT Russo Inc.[1] The Debtor did not list the Plaintiff as a creditor on Schedule D-Creditors Holding Secured Claims, Schedule E-Creditors Holding Unsecured Priority Claims or Schedule F-Creditors Holding Unsecured Nonpriority Claims, and he did not mention the Plaintiff anywhere in his statement of financial affairs or in the matrix.

The original deadline for filing complaints against the Debtor under 11 U.S.C. §§ 523(a) and 727 was May 19, 2003. The Chapter 7 Trustee held the § 341 meeting and filed a "Report of No Distribution" on March 20, 2003. As a consequence, the Chapter 7 Trustee did not request the establishment of a deadline for filing proofs of claim. The Debtor received a discharge of his

---

[1] The Debtor failed to list any ownership interest in that corporation on Schedule B-Personal Property. It appears from the pleadings that the Debtor closed the business three years prior to the petition date.

2

dischargeable debts on December 18, 2003,[2] and the Court closed the case on March 19, 2004.

On February 27, 2007 the Debtor filed a "Motion to Re-Open Case" (the "Motion to Reopen") and requested leave to "to add an additional creditor to his petition," namely, the Plaintiff. He also moved to amend Schedule F-Creditors Holding Unsecured Claims for the purpose of adding the Plaintiff as an unsecured creditor.[3] On amended Schedule F, the Debtor listed the claim of the Plaintiff, in care of her attorney, in the amount of $83,000. He described the debt as being owed "Since approx. 1987" and as a "Personal loan from aunt." The Debtor did not indicate whether the debt was contingent, unliquidated or disputed. On March 12, 2007, the Court granted the Debtor's Motion to Reopen and permitted him to amend Schedule F.[4]

On March 13, 2007, the Court issued a "Notice to Added Creditors," advising the Plaintiff, *inter alia*, that if she intended to file a complaint for a determination that her debt was nondischargeable, the deadline was May 12, 2007. Thereafter, the Plaintiff moved for authority to conduct a Rule 2004 Examination of the Debtor (the "2004 Motion"). In her motion, she represented that she did not receive notice of the Debtor's original bankruptcy filing and that "upon information and belief, the Debtor has not disclosed all of his assets. . . . " The Debtor responded to the 2004 Motion and later filed an affidavit on June 15, 2007 (the "Debtor's Affidavit") in which he represented that he had advised the Plaintiff of his bankruptcy

---

[2] The discharge under 11 U.S.C. § 727 did not discharge "debts which were not properly listed by the debtor." *See* 11 U.S.C. § 523(a)(3).

[3] The Debtor made no representations in the Motion to Reopen about whether his original omission of the Plaintiff was inadvertent or deliberate.

[4] The reopening of a closed case is permitted under 11 U.S.C. § 350(b) "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

case "within about two months after I filed the petition. . . ."

The Plaintiff filed a complaint against the Debtor on May 11, 2007 (the "Original Complaint") in which she sought a determination that the debt owed to her was nondischargeable pursuant to 11 U.S.C. § 523. She alleged that she was 89 years old, that she loaned the Debtor a total of $82,000 between 1983 and 2000, and that the Debtor used the money he borrowed for gambling activities, contrary to his representations that he would use the funds in connection with his business. Despite his repeated representations, the Plaintiff alleged that the Debtor failed to repay her, that he closed his business in 2000, and that he failed to inform her of his bankruptcy filing in 2003.

Although the facts alleged regarding the Debtor's misrepresentations and gambling activities were scant, the Plaintiff provided more specific details about her collection attempts against the Debtor. According to the Plaintiff, in 2005, the Debtor represented that he would repay her from the proceeds of the sale of his home in Natick, Massachusetts. Although he sold that home 2005, he failed to deliver any of the proceeds to the Plaintiff and relocated to Florida. The Plaintiff then commenced an action against the Debtor in state court in 2006 and obtained a default judgment (the "Judgment") against him in the Waltham District Court on July 14, 2006.[5] That court issued an execution on July 25, 2006. On September 24, 2006, the Debtor's mother died. On January 24, 2007, the Plaintiff levied on the Debtor's one-quarter interest in real estate located at 55 Mayall Road, Waltham, MA (the "Property") which had been owned by the Debtor's mother.[6] Further, the

---

[5] The parties did not submit a copy of the Judgment in any of their pleadings, and the Court is unaware of the dollar amount of the Judgment.

[6] The Debtor's interest in his deceased mother's estate is not property of his bankruptcy estate because he became entitled to acquire it more than 180 days after the petition date. *See* 11 U.S.C. Sec. 541(a)(5)(A).

4

Plaintiff alleged that her attachment of the Debtor's interest in the Property was the catalyst for the Debtor's filing of the Motion to Reopen on February 27, 2007.

The Plaintiff's Original Complaint contained only one count against the Debtor. The Plaintiff sought a determination that the Debtor's $82,000 debt to her was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) [7] because "the debtor knowingly continued to borrow money from plaintiff alleging business needs when contrary to these representations, he was using the monies for gambling/wagering."

On June 5, 2007, the Debtor moved to dismiss the Original Complaint (the "First Motion to Dismiss"), arguing that it lacked the specificity required by Fed. R. Civ. P. 9, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009, and that the Plaintiff's claims against him were discharged because she had actual notice of his bankruptcy filing. The Debtor further argued that the Plaintiff obtained the Judgment and the execution against him and his property interests in violation of the discharge injunction imposed by 11 U.S.C. § 524. The Plaintiff opposed the First Motion to Dismiss. On June 11, 2007, the Debtor also filed an Answer to the Original Complaint in which he asserted numerous affirmative defenses, including those asserted in his First Motion to

---

[7]The statute provides:

(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C.A. § 523(a)(2)(A).

Dismiss.

While these matters were pending in this Court, representatives of the Debtor's mother's estate attempted to sell the Property. A purported closing occurred on June 1, 2007. The closing attorney, however, refused to distribute any sale proceeds or record a deed without an order from this Court regarding the treatment of the Debtor's interest in the sale proceeds. On June 20, 2007, the Debtor filed an emergency motion requesting that his interest in the sale proceeds be held in escrow pending a resolution of this adversary proceeding (the "Escrow Motion"). The Plaintiff opposed the Escrow Motion and filed an affidavit on June 24, 2007 in which she attested that she "had no knowledge of [the] 2003 bankruptcy filing by [the Debtor]" and that she "learned of the . . . bankruptcy filing . . . in March of 2007."

The Court held a hearing on June 27, 2007 at which it addressed the First Motion to Dismiss, the 2004 Motion and the Escrow Motion. The Court denied the First Motion to Dismiss and directed the Plaintiff to amend her Original Complaint to include more specific allegations regarding the underlying loan transactions with the Debtor. With respect to the Escrow Motion, the Court directed counsel to the Debtor and the Plaintiff to hold the Debtor's pro rata share of the net proceeds of the sale of the Property in a joint escrow account (the "Escrow") pending final resolution of this adversary proceeding.[8] The Court also denied the 2004 Motion as unnecessary in light of the applicability of the discovery rules contained in Fed. R. Civ. P. 7026 through 7037 to this adversary proceeding. Finally, the Court ruled, on a preliminary basis, that the Plaintiff had not violated the discharge injunction under § 524 as her claims against the Debtor had not been discharged when she

---

[8] The Court issued an order, the form of which had been agreed to by the parties, on July 18, 2007, directing counsel to the Plaintiff and the Debtor to hold the sum of $95,000 in a jointly controlled escrow account, pending final resolution of this adversary proceeding.

obtained the Judgment.[9]

On July 6, 2007, the Plaintiff filed her Amended Complaint to Determine Non-Dischargeability of Debtor's Indebtedness to the Plaintiff (the "Amended Complaint"). The Amended Complaint contained two counts against the Debtor. Count I, which was substantially similar to Count I of the Original Complaint, was for actual fraud based on 11 U.S.C. § 523(a)(2)(A) "because the debtor knowing [sic] continued to borrow money from plaintiff for gambling not legitimate business purposes and without the intent to repay." Count II was a new count against the Debtor based on 11 U.S.C. § 523(a)(2)(A) [10] "because the debtor INTENTIONALLY (and/or fraudulently) OMITTED the plaintiff. . . from debtor's schedules. . . The doctrines of laches and estoppel now prevent debtor from discharging this debt or from re-opening his 2003 bankruptcy case." (emphasis in original). In Count II, the Plaintiff referenced the affidavit of Mary Ann McGovern (the "McGovern Affidavit"), the Debtor's sister, in which McGovern attested that the Debtor told her in 2003 that he had "intentionally omitted [the Plaintiff] as a creditor on his 2003 bankruptcy petition . . . ." In the Prayer for Relief of her Amended Complaint, the Plaintiff requested that the Court enter judgment against the Debtor under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and/or (a)(6); enter judgment against the Debtor for costs of collection and attorneys' fees; and rescind the allowance of the Debtor's Motion to Reopen this case.

On July 13, 2007, the Debtor filed the Motion to Dismiss the Amended Complaint,

---

[9] The Court will revisit this issue as discussed below in light of the allegations made in the Plaintiff's Amended Complaint.

[10] The Court presumes this citation to be a typographical error and that the Plaintiff intended to rely upon 11 U.S.C. § 523(a)(3) which provides an exception from discharge for certain debts which were not timely scheduled.

reiterating his prior argument that the Plaintiff failed to plead facts relating to fraud with sufficient particularity to satisfy the requirements imposed by Rule 9 and arguing that the Plaintiff failed to amend the Original Complaint as directed by this Court in its order of June 27, 2007. The Debtor also requested costs and attorneys' fees from the Plaintiff related to this litigation pursuant to 11 U.S.C. § 523(d) which provides that creditors may be required to pay consumer debtor's counsel fees in certain unsuccessful dischargeability actions under § 523(a)(2). [11] Lastly, the Debtor asked the Court to find the Plaintiff in contempt for violation of the discharge injunction imposed by 11 U.S.C. § 524 and to determine that the Judgment and execution issued by the Waltham District Court were void under § 524.

In response to the Motion to Dismiss, the Plaintiff filed the Opposition in which contended that the Amended Complaint contained information and allegations sufficient to meet the applicable pleading standards. She also maintained that she was entitled to summary judgment on Count II of the Amended Complaint based upon the McGovern Affidavit.

The Court conducted a hearing on September 14, 2007 at which counsel to the Plaintiff acknowledged that the Amended Complaint did not contain the detailed information ordered by the

---

[11] That statute provides:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C.A. § 523(d).

Court on June 27, 2007 with respect to Count I, the only count in the Original Complaint. Tr. at p. 9. Counsel explained that this failure was due to the Plaintiff's age, her failure to maintain business records regarding the loan transactions, and the current unavailability of bank records due to bank consolidations. Debtor's counsel represented at the hearing that the Debtor "moved the Waltham Court to have the [J]udgment set aside completely, and [that] Court was hesitant to do that because they were aware of these proceedings, so that did not happen." Tr. at p. 7.

The Court took the matter under advisement and directed the parties to file supplemental memoranda regarding the new standard for motions to dismiss articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007). The Plaintiff filed a brief in which she argued that the Amended Complaint should survive the Motion to Dismiss under the standard of Bell Atlantic and that Rule 9 either does not apply to the Amended Complaint or, alternatively, that she has sustained her burden with respect to that Rule. Additionally, she appended to her brief copies of various checks which she contended accounted for some of the loans.

## III. DISCUSSION

A.  The Reopening of the Debtor's Case

The facts alleged by the Plaintiff in the Amended Complaint and in the affidavits transcend her claims for nondischargeability and present serious questions concerning the Debtor's conduct in this case which the Court is compelled to address. Under the alleged scenario outlined by the Plaintiff, the Debtor enjoyed the full benefits of a bankruptcy discharge after he deliberately and fraudulently breached his duty to schedule all of his debts, a duty which he declared under penalty

of perjury that he had fulfilled.[12] Worse, when the Debtor's strategy to conceal his bankruptcy filing from the Plaintiff apparently failed, he compounded his earlier offense in an effort to protect a postpetition asset from her reach.

If these facts are true, the Debtor intentionally misrepresented his financial condition to the Court and deprived the Plaintiff of her rights as a scheduled creditor, including the right to question him at the creditors' meeting, object to his exemptions and discharge and generally participate in the administration of his bankruptcy estate. Any intentional omission by the Debtor undoubtedly prejudiced the Plaintiff who expended time and attorneys' fees in the state court litigation against him which she would not have incurred had her claim been properly listed and discharged in 2003. Moreover, the passage of time has reduced the likelihood that the Plaintiff could produce testimonial or documentary evidence of the underlying debt. Indeed, given the Plaintiff's age, the extended duration of this matter could have completely divested her of the ability to pursue the Debtor for the unpaid loans.

This adversary proceeding and all of the litigation between the parties in this Court ensued from the Court's order dated March 12, 2007 which allowed the Debtor's Motion to Reopen. Had the Court not permitted the Debtor to reopen the case, his debt to the Plaintiff would remain undischarged and she would be free to pursue him and his property interests in state court as she had been doing until March 12, 2007. The decision to reopen a case under 11 U.S.C. § 350 is

---

[12] The Plaintiff did not suggest a motive in the Amended Complaint for the Debtor's alleged omission of the Plaintiff's claim. The Court notes, however, the representations made by the Plaintiff in the 2004 Motion in which she stated, upon information and belief, that the Debtor concealed assets in his bankruptcy case. If the Plaintiff could have and would have informed the Chapter 7 trustee about these allegedly concealed assets, her knowledge could have been the motive for the omission of his debt to her.

discretionary. Mass. Dep't of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 53 (1st Cir. BAP 2007)(citing In re McGuire, 299 B.R. 53, 55 (Bankr.D.R.I.2003)). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings." Id. (citing In re Case, 937 F.2d 1014, 1018 (5th Cir.1991)). The Code does not define "other cause" in § 350 but bankruptcy courts may consider equitable factors in determining whether such exists. In re Malden Mills Indus., Inc., 361 B.R. 1, 7 (Bankr. D. Mass. 2007).

If the Plaintiff's position is correct, the Debtor's filing of the Motion Reopen was an attempted circumvention of the equitable principles underlying the Bankruptcy Code. The Court is therefore compelled to determine whether there has been an abuse of the judicial proceedings of this Court and whether to invoke the doctrine of judicial estoppel, or, at the very least, determine whether grounds exist for relief from the Court's order of March 12, 2007 under Fed. R. Civ. P. 60(b)(3), made applicable hereto by Fed. R. Bankr. P. 9024.[13]

The First Circuit Court of Appeals case of Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570 (1st Cir. 1993) is instructive. In Payless, the Plaintiff/Chapter 11 debtor failed to list causes of action against Alberto Culver (P.R.), Inc. and others both in its schedules and in its disclosure statement. After exiting bankruptcy, it sued Alberto Culver and others for damages. The Court of Appeals applied the doctrine of judicial estoppel and dismissed the debtor's suit against the defendants. The court ruled:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release

---

[13] Fed. R. Civ. P. 60(b)(3) provides:
(b) On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order . . . for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;. . .

> their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. *See, e.g.,* In re H.R.P. Auto Center, Inc., 130 B.R. 247, 253-54 (Bankr.N.D.Ohio 1991) (collecting cases). Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis. This may not be strictly equitable estoppel, as the court observed. Indeed, defendants may have a windfall. However, it is an unacceptable abuse of judicial proceedings.

Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st. Cir. 1993).

The Court will schedule an evidentiary hearing regarding the Debtor's omission of the debt owed to the Plaintiff from his original schedules. At the evidentiary hearing, the Debtor may present evidence that he did inform the Plaintiff of his bankruptcy filing in 2003 as he attested in his affidavit. At the conclusion of the hearing, the Court shall consider whether grounds exist to vacate its March 12, 2007 order reopening this case.

B.    The Motion to Dismiss

In deciding a motion to dismiss, this Court must accept as true all well-pleaded factual assertions in the Amended Complaint and draw all reasonable inferences from those assertions in the Plaintiff's favor. Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 988 (1st Cir. 1992). At a minimum, a claimant is obliged to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Roth v. U. S., 952 F.2d 611, 613 (1st Cir. 1991)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). Federal Rule of Civil Procedure 8(a)(2), made applicable by Fed. R. Bankr. P. 7008(a), requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Both counts of the Amended Complaint allege fraud on the part

12

of the Debtor. The pleading requirements for fraud are found in Fed. R. Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009. Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). *See also* Boles v. Filipowski (In re Enivid, Inc.), 345 B.R. 426, 442 (Bankr. D. Mass. 2006). The particularity requirements in allegations of fraud and mistake are satisfied by averments "of the who, what, where, and when of the allegedly false or fraudulent misrepresentation." Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).

In Count II of the Amended Complaint, the Plaintiff alleged that the debt owed to her is nondischargeable "because the debtor INTENTIONALLY (and/or fraudulently) OMITTED the plaintiff. . . from debtor's schedules. . . The doctrines of laches and estoppel now prevent debtor from discharging this debt or from re-opening his 2003 bankruptcy case." (emphasis in original). Despite the Plaintiff's mislabeling of Count II as one under § 523(a)(2)(A), the Court will address that count as one under § 523(a)(3). Section 523(a)(3) provides:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3).

The Plaintiff has alleged sufficient facts in the Amended Complaint, coupled with the McGovern Affidavit, to meet her pleading burden under Rules 8 and 9 and overcome the Motion to Dismiss with respect to Count II. If the Court determines after the evidentiary hearing that grounds exist to vacate its order reopening the Debtor's case, then this case will revert to the *status quo ante*. The Plaintiff will have established under § 523(a)(3) that she was deprived of the ability to both a file a proof of claim and a nondischargeability complaint by the original deadlines imposed in the case.[14] The Court finds that the facts alleged in the Amended Complaint contain the "who, what, where and when of the allegedly . . . fraudulent misrepresentation" as required by Rule 9 to support a claim under Count II, Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004)(citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc. 374 F.3d 23, 29 (1st Cir. 2004)), as well as "enough facts to state a claim to relief that is plausible on its face" with respect to Count II. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). *See also* Holland v. EMC Mortgage Corp. (In re Holland), 374 B.R. 409, 437-441(Bankr. D. Mass. 2007). The Court need not address the Motion to Dismiss with respect to Count I at this time because Count II, if established by the Plaintiff, would be an independent ground for nondischargeability and would render Count I superfluous.

## IV. CONCLUSION

For the reasons stated above, the Court denies the Debtor's Motion to Dismiss the Amended

---

[14] Listed creditors in this case were directed by the Court not to file proofs of claim until otherwise notified. Therefore, the Plaintiff did not have the opportunity to file a proof of claim.

Complaint.[15] The Court will schedule an evidentiary hearing regarding the Debtor's omission of the Plaintiff from his original schedules. Following the evidentiary hearing, the Court will consider the parties' respective requests for attorneys' fees and costs, the Debtor's request for a determination that the Judgment and execution issued by the Waltham District Court are void under 11 U.S.C. § 524, and the Debtor's request that the Court find the Plaintiff in contempt for violation of the discharge injunction imposed by § 524. The parties are ordered to maintain the Escrow pending further order of this Court to preserve the Plaintiff's rights, if any, with respect to that fund.

By the Court,

*/s/ Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 28, 2007

---

[15] The Court will not consider the Plaintiff's request in the Amended Complaint for determinations of nondischargeability under §§ 523(a)(4) or (a)(6) as the Plaintiff failed to plead any facts to establish a cause of action under either of those sections. The Court will also not consider the Plaintiff's request for summary judgment on Count II as there exists a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056.